May it please the Court, my name is Ronald Connolly and I'm counsel to Casa Colina Hospital and Centers for Health Care. I request to reserve two minutes for rebuttal. Casa Colina has a statutory right to Medicare Administrative Law Judge hearings and decisions within 90 days of filing. Casa Colina has now been waiting three years, and this is despite a statute that clearly entitles Casa Colina to the hearings in 90 days. Since the District Court issued its decision, the Secretary has made no progress on these ALJ deadlines. The backlog is only getting longer, and Casa Colina's wait only extends. Casa Colina requests that this Court issue a writ of mandamus, and Casa Colina has also requested similar relief under the Medicare Statute and Administrative Procedure Act. Casa Colina is entitled to the writ of mandamus because it has met the three core jurisdictional components for mandamus. Its claim is clear and certain. The official's duty here, the Secretary, is non-discretionary, ministerial, and so plainly prescribed as to be free from doubt, and no other adequate remedy is available. Well, if you have a valid claim like that, so does everybody else that's in line. Sounds to me like you're trying to jump the line, right? Well, that's... Not that there's anything wrong with that. I'm just saying, you know, if everybody pressed this claim, there's just not enough ALJ time to decide these cases within the statutory framework. Is that really a legal question rather than a political question? Judge Kuczynski, I have a couple of responses to that. First, it's always true that a successful litigant obtains some advantage that is not available to parties or individuals who don't litigate. Second, it cannot be the case that because everyone is harmed by the ALJ delay that no one can seek relief. And that seems to be what the government is arguing, and that seems to be what the district court said in its statement that we were trying to jump the queue. But to some extent, that's what they're saying. They're saying, look, you bought into the system. You don't have to, right? I mean, you know there's a long wait for these things. You know there's a theoretical statutory deadline. You know that the government consistently doesn't meet it. You don't have to participate. And so? The alternative, Your Honor, would be just to accept the government's decision that the services that Casa Clina provided are not payable. We strongly disagree with that, and so the only way to contest those decisions is to- Just not provide services. Casa Clina could not provide services at all, or it could withdraw from the Medicare program, but that's not a tenable choice. Because Medicare provides health insurance to the vast majority of elderly individuals in this country. So Casa Clina must be a viable entity. It must participate in Medicare. It must accede to the audits that the government imposes on it. And if the government denies claims, then it is entitled to this administrative appeals process that sets out very firm deadlines. Here the statute says that the secretary shall issue decisions in 90 days. And to fail to give effect to that, that's clearly plain statutory language would be to disregard the will of Congress that the secretary will provide decisions in 90 days. The Congress- You're seeking an equitable remedy, right? An equity- There's no right to an equitable remedy. It's a matter of equitable balancing. So if you are the court issuing the- asked to issue the injunction, I guess you're asking us to tell the district court to issue it. You get this remedy, and then of course everybody else in line says, well, they got it. We're entitled to it, too. And then the court, of course, has to give it to them as well. And nothing is accomplished at that point, right? Well, what we hope would be- So, you know, there's the practicality of the situation. This is one of the considerations that equity courts take into account is the sort of practical effect, whether, you know, this is a practical remedy. And I just don't see where this is a practical remedy. Judge Kaczynski, mandamus is an equitable remedy. But it is also the case that Congress can constrain the court's equitable authority, and it has done so here with this statutory deadline in plain language. And that is what the Ninth Circuit said previously in the Biodiversity Legal Foundation decision, in which it stated that the exercise of discretion is foreclosed when statutorily imposed deadlines are not met. And the court stated, the Ninth Circuit stated that by speaking in the plainest of words, Congress has foreclosed the exercise of the usual discretion possessed by a court of equity. That's the case here. Congress, by using plain language, the Secretary shall decide ALJ appeals in 90 days. It has constrained the court's usual equitable authority. And so once casa clina has met the three core jurisdictional components, then the writ should issue. Is there a way for us to go your way in this case without creating a split with the Fourth Circuit? There is a different law in the Ninth Circuit than in the Fourth Circuit. Again, the Biodiversity Legal Foundation. But beyond that, there would be a split between this circuit and the Fourth Circuit, but this circuit would be aligned more or less with the D.C. Circuit. Sure. And have you seen any cases that reconcile the D.C. Circuit's decision and the Fourth Circuit's decision? No. Because I didn't. In reading the opinions, they didn't seem to acknowledge each other, the D.C. Circuit. Even though they're right next to each other, they didn't seem to know each other. That's correct. The decisions came out fairly close to one another. The D.C. Circuit issued its decision a month before the Fourth Circuit issued its decision. The plaintiff's, Cumberland County, submitted a 28-J letter to the Fourth Circuit informing it of the D.C. Circuit's decision. But you're correct. The Fourth Circuit didn't acknowledge that decision. And, Judge Kaczynski, you alluded to the fact that if you decide in our favor that other litigants might seek similar relief. The presumption is that the Secretary would take steps to solve the backlog that haven't been taken already. And, moreover, the Secretary's preferred. I'm sorry. Like what? Well, in our complaint and in a declaration submitted by Casa Colina's CEO, we outlined many problems with the current appeals process. The first two levels of appeal really don't function. They're more or less rubber stamps of the initial auditors. So if the Secretary exercised more oversight over those first two levels, perhaps there would be better decisions there and fewer appeals would make it to the ALJ level. The Secretary has settled cases with other provider types. The Secretary could look toward other types of global settlements. The Secretary could exercise greater control over his audit contractors. We've discussed in our briefs the recovery audit contractors, but there are many other audit contractors out there that are also auditing claims and doing an equally poor job, in our opinion. Now, at the heart of the Secretary's argument, though, is that this is not a hard deadline because there is a consequence, quote, failure to meet deadline, end quote. So Congress anticipated that this deadline would not be always met and provided the consequence for the direct appeal to the DAB. And so one of my questions is, it seems to me that you broadly pled that there was an unreasonable delay, and the statute, 706, sets out that there is where there's been a withholding or unreasonable delay, and I'm wondering if you believe that that's still part of this case. Well, Your Honor, Judge Settle, I believe you're referring to the option of escalation, which an appellant can skip the ALJ level and go one level up. That's the first part of my question, yes. And the answer to that, Your Honor, I think was the D.C. Circuit statement that the existence of a consequence does not undermine the force of a command. So just because there is a consequence doesn't mean that the deadline is not mandatory. Furthermore, for the purposes of the mandamus analysis, we have to ask whether it's an adequate alternative remedy. It is an alternative remedy, but it was meant to be the exception, not the rule, and now the Secretary wants it to be the rule in all cases. And it's just not true that an appellant can get the same process by escalating because we would forego the factual hearing before an ALJ where we would present witness testimony from the treating physicians and others. So we contend that it's not an adequate alternative remedy for that reason. I believe my time is finished. Okay. Thank you. We'll hear from the government. Thank you. Thank you, Your Honor. May it please the Court, Joshua Salzman on behalf of the Secretary. Plaintiff's mandamus claim fails for two independent sets of reasons. First, plaintiff can't meet the three threshold criteria to demonstrate entitlement to mandamus relief. And second, even were that not the case, plaintiff fails to show that the district court abused its discretion, and it is an abuse of discretion standard, in determining that in light of the practical realities and constraints facing the agency, that it would not be equitable to issue mandamus here. Plaintiff's non-mandamus claims are barred due to failure to exhaust administrative remedies. Why do the hardships on the agency bear on the equities of the relief? As I think Your Honor pointed out just a few moments ago, there are practical realities that need to be acknowledged here. The agency, speaking in rough terms. Okay. I think we all know. So what? There's clear statutory command, and the practical realities are something for the defendant to work out within its – why is that something that concerns the court when you've got something that's a clear statutory command? And a clear – what she looks to me like a clear entitlement that is repeatedly and over long periods of time being ignored by the defendant. First of all, I'd just like to bracket that we definitely take issue with the idea that there is a clear statutory command here, but I'd like to go to the thrust of your question, and I'll circle back to that. In terms of why the practical realities matter here, because this is a case under equity, because, for example, in Environmental Defense Center v. Babbitt, there this court found that the agency was in violation of a statutory command because a statute clearly required an agency to take an action, but Congress had passed an appropriations rider that precluded the agency from taking that action. The court specifically said the appropriations rider did not modify the underlying statute, that the command remained. But the court said, of course, in light of the realities of the situation, in light of the fact that the agency can't expend any money to fulfill this obligation, it would be inappropriate for – to compel the action when the agency has no means of complying. Here, the agency has been tasked with a workload that cannot possibly manage There are, in rough terms, 650,000 appeals that are currently pending, and the agency, after doubleting the efficiency of its ALJs, only has the resources to adjudicate between 80,000 and 90,000 appeals each year. But that's not the only solution. The other solution is you just pay more claims. It takes two to appeal, right? Just like Tango, in this case, if the agency just pays more claims without dispute, you would have fewer appeals. It's not like Congress says you can't spend the money. You can spend the money. That's actually not correct, Your Honor. Congress has imposed a lot of restrictions on the payment of Medicare funds. I'd particularly refer the court to 49 U.S.C. 1395Y, which says notwithstanding any other provision of the Medicare statute, which would presumably include the provision that sets this 90-day timetable, claims cannot be paid unless they meet certain criteria. There are plenty of other provisions, including 1395F, that establish additional criteria at length and require the Secretary to verify that claims should be paid. On top of that, the Secretary – the Congress ordered the Secretary, in order to ensure the integrity of the Medicare program, to establish an audit system. That's in 1395DDD. So the Secretary, under our basic separation of powers principles, does not have authority to go paying claims that do not meet the criteria for payment under the Medicare statute. What if the government in this case said it's going to take 100 years to pay these off? Nobody thinks that the status quo is acceptable, Your Honor, and I want to be clear about that. And the agency is committed to resolving this problem, but it's a problem that they need help from Congress with. But getting back to my question, they say 100 years. Would that be the case for mandamus? I honestly don't know what mandamus here would accomplish, Your Honor, unless it's putting Casa Colina to the front of the line and skipping over everyone ahead of them, which is something both the D.C. Circuit and the Fourth Circuit said would be inequitable and inappropriate. I get it. The problem here, there aren't enough ALJs, correct? Yes, Your Honor. When ALJs make decisions in these cases, are these the only kind of cases they decide or are there other types of cases they decide? These ALJs, I believe, have a limited additional back load, but this is the principal thing that they're working on. So couldn't they not deal with that additional back load, as you call it, and just say 100 percent of your time is going to be on these types of claims? Their total adjudication capacity is in the neighborhood of 80,000 decisions. This isn't a case where a discretionary decision to allocate resources differently would enable the agency to come close to meeting the 90-day timetable until the agency gets additional resources and authorities from Congress. And the agency has been working with Congress to try to do that. They've been also instituting various programs to try to address the backlog. They're working hard as they can within their existing constraints, but those constraints are real and they're not something that the agency can wish away. This isn't due to a lack of will. This is due to a lack of resources. So to answer Your Honor's question about the 100 years, conceivably, if the agency was ignoring the problem, if the agency said this isn't a problem, if the agency was just sort of flouting any intention of trying to go down that road, that would present a different case. But here we have an agency that has gone to Congress, made Congress aware of the situation, asked for the additional resources, submitted to GAO review to see what the agency could be doing better, and has repeatedly asked for a substantial increase in funding and has introduced all sorts of programs to try to ameliorate the problem and has, when possible, settled large batches of claims. When the agency was able to find a discrete batch of claims that could be settled in a way that would be consistent with the agency's fiduciary and legal obligations to the Medicare Trust Fund, they did. They went ahead with the settlement and were able to resolve over 300,000 appeals that way. The path here actually hasn't been just worsening and worsening and worsening. The agency, because of these extraordinary efforts, has beaten back the flow and has reversed the trend a little bit. Now, I don't want to delude Your Honor. It's going to get worse. That's what we told the district court in D.C. But the agency is struggling to the best of its ability against this, all of this. But if I can, I'd like to return to the threshold statutory question because I don't think I've had a chance to address that yet. And remember, the burden is on them to show a right that is clear and certain. Here, what they're asking for is something akin to specific performance, that the agency be required to give a hearing in 90 days. But in the very same statutory subsection, in subsection D, they rely on D1, that's where the 90-day timetable is. In D3, it says consequences of failure to meet deadlines. And Congress anticipated that the 90-day timetable would sometimes go unmet, and it selected a remedy. It said that providers would be given the option to be spared the exhaustion requirement at the third level of review and could proceed directly to the fourth level of review and the cusp of access to judicial review. But is that a clear right to relief if, in fact, the review at the DAB really is not the same as what the ILJ or ALJ affords? That is, at the ALJ, there's the opportunity to call doctors, to call witnesses, to give testimony. This is not available at DAB. So, first of all, I think it misunderstands how these appeals work to think that live testimony is really what's very significant here. In a 1987 decision of this court called Kasim v. Bowen, which plaintiffs cite repeatedly, in footnote 3, this court explicitly recognized that in deciding whether or not certain claims are eligible for payment, live testimony, that's not going to be a credibility determination where live testimony is likely to be particularly probative. What these cases are about generally is documentation. The provider has an obligation to prepare contemporaneous medical records showing that these services were necessary. And those documents are within the control of the provider. And under the statute, under subsection B-3 of the statute, the provider is required to build the entire record by the second level of review. And to the extent, for whatever reason, they don't do that, if there's good cause, they're able to continue to build the record at the third level and the fourth level of review to submit additional documents. I think it would surprise this court to hear that in an APA case, for example, that there's no meaningful review that can be done on a record when there has been an adequate opportunity by the plaintiff to put in all of the materials needed to show that these services were rendered and that they were reasonable and necessary, and then to submit legal argument highlighting how the various submissions meet the criteria for payment. I see that I'm over my time, unless the panel has any further questions. Thank you. You're out of time. We'll give you a minute for a bottle if you wish to take it. Thank you, Judge Kuczynski. First, I'd like to address the practical realities that Mr. Saltzman referred to. This is not a case as an environmental defense fund in which Congress has appropriated no money. Congress gives a secretary $100 million per year to decide ALJ appeals. Congress has also imposed a 90-day deadline. We have to draw the conclusion from those two facts that Congress expects the secretary to do the job for the $100 million. In order for the secretary to clear the backlog, and the secretary repeatedly states that only money, only throwing more money at this problem is going to solve it, in order to clear the backlog in the next four years, the secretary would have to decide an additional 200,000 cases per year. That would require a tripling or a quadrupling of the budget for administrative law judge hearings. It's just not reasonable to expect that Congress is going to quadruple the secretary's budget for ALJs. The secretary has to do more with the funds that have been appropriated. The council also mentioned that witness testimony is not needed in these cases, but that flies in the face with the fact that Congress provided a process that involves witness testimony. That's the process that Congress provided, an evidentiary hearing before an administrative law judge. Thank you. Thank you. Cases are, you will stand submitted. We are adjourned.
judges: Kozinski, Owens, Settle